**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 8:12-CV-02772-MSS-EAJ<br>)<br>) |
| AMERICAN TOOL & MOLD, INC. | )<br>) |
| Defendant. | )<br>)<br>) |

**PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S**
**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

The EEOC filed its Complaint in this action on December 10, 2012. (Dkt. #1.) Defendant filed and served a Motion to Dismiss (Dkt. #13) on January 4, 2012, pursuant to Fed.R.Civ.P. 12(b)(6). Less than 21 days have elapsed since Defendant filed and served its Motion to Dismiss. Accordingly, the EEOC files this Amended Complaint as a matter of course pursuant to Fed.R.Civ.P. 15(a)(1)(B).

This is an action under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110–325, 122 Stat 3553 (2008) (codified as amended in scattered sections of 42 U.S.C.), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a. The EEOC alleges that Defendant American Tool and Mold ("ATM") violated the ADA, as amended, when it terminated the employment of Charging Party Michael Matanic ("Matanic" or "Mr. Matanic") because ATM regarded Matanic as disabled.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida, Tampa Division.

## PARTIES

3. The Commission is an agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference § 706(f)(1) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. American Tool & Mold ("ATM") is a designer and manufacturer of injection plastics with its principal place of business in Clearwater, Florida. At all relevant times, ATM has continuously done business in Florida, and has continuously had at least fifteen employees.

5. At all relevant times, ATM has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference 42 U.S.C. 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e (b), (g), and (h).

6. At all relevant times, ATM has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEEDINGS

7. More than thirty days prior to the institution of this lawsuit, Mr. Matanic filed a charge of discrimination with the Commission alleging violations of ADA. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

8. ATM is a private company based in Clearwater, Florida, that designs and manufactures molds for injection plastics.

9. ATM employs over 140 people and has been in business since 1978.

10. On or about the summer of 2003, Michael Matanic had successful surgery on his back in El Paso, Texas, to correct two herniated disks.

11. Between the summer of 2003 and October, 2009, Mr. Matanic was successfully employed in the plastic injection molding industry, performing job duties and responsibilities including those performed by process engineers.

12. In the fall of 2009, Michael Matanic, while residing in El Paso, Texas, was recruited by ATM for the position of Process Engineer at its Clearwater, Florida, facility.

13. ATM provided a written offer of employment for the Process Engineer position to Mr. Matanic on October 22, 2009, which he accepted.

14. At the time Matanic accepted ATM's offer of employment for the Process Engineer position and at all relevant times since 2003 and through the date ATM terminated his employment, Matanic had no physical limitations affecting his ability to perform the

duties and responsibilities of the position including, without limitation, his ability to lift and carry a minimum of 30 pounds, or otherwise to perform the essential functions of the Process Engineer position.

15. As part of the offer of employment, Matanic was required to undergo a post-offer medical examination.

16. ATM has a policy requiring medical documentation releasing employees for work without restrictions, even when the applicant can perform the essential functions of the position.

17. The ATM Process Engineer job description lists the following responsibilities, among others: "process adjustments with injection molding machines; monitoring of the machines process parameters and troubleshooting; documenting all process changes and update process documentation; communicating tooling & machine issues; computer literacy (input production); performing mold setups; pulling full boxes / crates from under machines / weigh boxes & label as needed; keeping assigned machines clean including the floor under and around machines, wiping up all oil leaks."

18. On November 6, 2009, Matanic reported for work, completed a pre-employment questionnaire/application for employment, and was sent to the Lakeside Occupational Medical Center in Largo, Florida, for a physical examination and drug test.

19. Lakeside Occupational Medical Center ("Lakeside Medical Center") is a medical clinic that ATM contracts with to conduct its post-offer medical examinations. Lakeside Medical Center documents and reports its findings to ATM and acts in accordance with ATM's policies.

20. At this clinic, Matanic completed a "short health history" form, on which he indicated that he had the following operation/procedures: appendix, back, and right eye surgery.

21. Matanic also completed a "back history" form on which he indicated that he previously had surgery on his back to correct two herniated disks.

22. As part of its post-offer physical examination of Mr. Matanic, Lakeside Medical Center staff determined that Mr. Matanic's back was "normal," as reflected on the Physical Examination form completed by Lakeside Medical Center staff on November 6, 2009.

23. Lakeside Medical Center staff also indicated on a "back health screening" form that Matanic's clearance for work was "deferred." The deferral was not based on any detected physical limitation, but was based on ATM's policy requiring Matanic to provide a release indicating no restrictions from the surgeon who performed his 2003 back surgery.

24. In compliance with ATM's policy, the staff at Lakeside Medical Center informed Matanic that he would not be permitted to work at ATM without the release from the surgeon who performed his 2003 surgery.

25. Although his physical examination was "normal" and there were no physical limitations on his ability to perform the duties and responsibilities of the Process Engineer position, ATM's Plant Manager, Michael Eikenberry, confirmed that ATM received a report from the Lakeside Medical Center on November 6, 2009, indicating that Matanic would not be considered "fit for employment/work [at ATM] until a medical statement from the

5

surgeon who performed the surgery in 2003 was received stating that the employee has no restrictions and is able to perform essential job functions."

26. On November 11, Matanic met with ATM owner, Demetre Loulourgas, and Plant Manager, Michael Eikenberry, and informed them that his 2003 back surgery was a success, that he was in fine health, that he took no medications relating to his back, and that he has successfully performed the duties and responsibilities of the Process Engineer position in several different jobs since 2003 with no problems.

27. Mr. Loulourgas asked Matanic, pursuant to ATM's policy, to continue trying to get the required documentation to Lakeside Medical Center and informed Matanic that he would "waive the exam results for a period of 30 days," out of consideration for the fact that Matanic had relocated from Texas to accept the position.

28. Matanic's official first day of work was November 12, 2009.

29. On that day, Matanic was informed by ATM that he would not be eligible for "permanent" hire until the requested medical release was received.

30. Matanic also completed a written statement that he added to his application for employment verifying that he had back surgery in 2003, that the surgery was a success, that he had previously worked in the same capacity for another company with no ill effects, and that he had no restrictions after that surgery.

31. In November, Matanic called the hospital in El Paso, Texas, where his surgery had been performed, as well as the clinic where the operating doctor, Dr. Cho, practiced. Both places told him that Dr. Cho was no longer in El Paso. Mr. Matanic also learned that Dr. Cho was no longer licensed to practice medicine. The hospital faxed Matanic a post-

operation report that he took to Lakeside Medical Center. Lakeside Medical Center staff informed him that the report did not satisfy ATM's requirement of a "release."

32. On or about December 10, 2009, Matanic relayed this information to Eikenberry and Penny Loulourgas, ATM's Human Resources Manager, who both told Matanic that he would not be permitted to continue to work without the release, but that they would give him an additional thirty (30) days to get the release.

33. In January, Matanic called Lakeside Medical Center to ask if he could get a release from another doctor and they said this would be okay.

34. Matanic told Eikenberry that he would get a medical exam while he was on a visit to Minnesota in January, 2010.

35. On January 12, 2010, Matanic was examined by Dr. John Petersen of Lakeview Clinic, Ltd., in Chaska, MN, who completed a "Worker Status Report" indicating that Matanic had "No limitations, No residual disease, No work restrictions."

36. On January 13, 2010, Matanic returned to the Lakeside Medical Center in Largo, Florida, with the Worker Status Report. Lakeside Medical Center staff told Matanic that this report was insufficient, and that the medical documentation that was required was a release "from the surgical team that performed the procedure" in 2003, or from either an orthopedic surgeon or a local physician stating that Matanic had no permanent restrictions.

37. In accordance with ATM's policy, Lakeside Medical Center prepared a case management statement dated January 13, 2010, concluding that Matanic was "Deemed Not Fit" for employment because he had not provided a release from the team that performed his 2003 back surgery, not because of any physical inability.

38. Sometime in January 2010, Matanic contacted a local physician who required an MRI prior to examining him. Matanic learned that this would cost approximately $2,000.00 and would not be covered by his insurance and he determined that he could not personally cover the cost of the MRI.

39. Eikenberry informed Matanic that ATM could do nothing further to help him, and would not pay for the MRI and exam by a local physician.

40. Consistent with its policy requiring Matanic to provide medical documentation releasing him for work without restrictions, and even though Matanic was able to perform the essential functions of the Process Engineer position, ATM nevertheless regarded Matanic as disabled and denied him the opportunity to continue employment.

41. ATM regarded Matanic as a potential liability because he was unable to provide a release from his 2003 surgeon indicating that he could work without restriction, even though both Lakeside Medical Center and Dr. Petersen, the physician who examined Mr. Matanic in January 2010, confirmed that Matanic had no limitations on his ability to work or any restricting or limiting back condition.

42. Between November 12, 2009, and his termination in January 2010, Mr. Matanic successfully performed all of the duties and responsibilities of the Process Engineer position.

43. ATM terminated Matanic's employment in January 2010 because it regarded him as disabled based solely on his inability to provide a release from his 2003 surgeon.

44. As a result of his termination, Mr. Matanic suffered damages.

## STATEMENT OF CLAIMS

45. Paragraphs 1 through 43 are incorporated herein.

46. ATM violated the Americans with Disabilities Act by taking adverse employment action against Michael Matanic, who could and did perform all the essential functions of the Process Engineer position and who had no physical restrictions or limitations affecting his ability to work, on the basis of a perceived disability in violation of 42 U.S.C. § 12112(a).

47. The effect of the practices complained of in paragraphs 8 through 43 above has been to deprive Mr. Matanic of equal employment opportunities and otherwise to adversely affect his status as an employee because of a perceived disability.

48. The unlawful employment practices complained of in paragraphs 8 to 43 were intentionally done with malice and/or reckless indifference to the federally protected rights of Mr. Matanic.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

49. Grant a permanent injunction enjoining ATM, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in employment practices that discriminate against qualified individuals on the basis of his or her disability or perceived disability in regard to the terms and conditions of employment;

50. Grant a permanent injunction enjoining ATM, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in employment

practices that discriminate against qualified individuals on the basis of his or her disability or perceived disability in regard to the terms and conditions of employment;

51. Grant a permanent injunction enjoining ATM, its officers, successors, assigns and all persons in active concert or participation with it, from using exclusionary medical examination criteria to screen out or tend to screen out qualified individuals with a disability;

52. Order ATM to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities, and that eradicate the effects of its past and present unlawful employment practices;

53. Order ATM to make whole Mr. Matanic by providing appropriate back pay with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to, reinstatement of Mr. Matanic or front pay in lieu thereof;

54. Order ATM to make whole Mr. Matanic by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of in paragraphs 8 to 43 above, in amounts to be determined at trial;

55. Order ATM to make whole Mr. Matanic by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of in paragraphs 8 to 43 above, in amounts to be determined at trial;

56. Order ATM to pay Mr. Matanic punitive damages for its malicious and reckless conduct, as described in paragraphs 8 to 43 above, in amounts to be determined at trial;

57. Grant such other further relief as the Court deems necessary and proper in the public interest; and

58. Award the Commission its costs in this action.

## JURY TRIAL DEMANDED

The Commission requests a jury trial on all questions of fact raised by this Complaint.

Dated: February 20, 2013.

    Respectfully submitted,

    ROBERT WEISBERG
    Regional Attorney
    Florida Bar # 285676

    KIMBERLY McCOY-CRUZ
    Supervisory Trial Attorney
    Florida Bar # 153729

    s/Muslima Lewis
    MUSLIMA LEWIS
    TRIAL COUNSEL
    Florida Bar No: 158305
    Senior Trial Attorney,
    Equal Employment Opportunity Commission
    Miami District Office
    100 SE 2nd Street, Su. 1500
    Miami, Florida 33131
    Tel: 305-808-1784
    Fax: 305-808-1835
    muslima.lewis@eeoc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

    George E. Tragos, Esq. (george@greeklaw.com), and
    Peter A. Sartes, Esq. (peter@greeklaw.com)
    Tragos & Sartes, P.L.
    601 Cleveland Street
    Clearwater, Florida 33755
.

                                    s/ Muslima Lewis
                                    MUSLIMA LEWIS